CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

DEC 2 8 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 7:08cr00047-2 |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| DICK R. JENKINS | ) | By: Samuel G. Wilson |
| | ) | United States District Judge |

A corporation sued its former president, Roy Dickinson, in this court, and then the United States indicted him on charges that arose out of that dispute. Later, the United States charged defendant, Richard R. Jenkins, and two others, Kerry Rex Smith and Louis L. Getman, with various obstruction of justice related offenses arising out of a scheme to conceal and protect Dickinson's income and assets from creditors and the government under the auspices of a bogus church, deceptively named the Church of Healing Arts and Sciences ("CHAS"). Count One charged Jenkins and his co-defendants with conspiracy to obstruct a civil proceeding (Dickinson's employer's suit) in the United States District Court for the Western District of Virginia in violation of 18 U.S.C. §§ 1512 and 371; Count Three charged Jenkins with obstructing federal grand jury proceedings (the investigation of Dickinson and the scheme to conceal and protect his income and assets) in this district by giving misleading testimony before the grand jury in violation of 18 U.S.C. § 1512(c)(2) and (k); and Count Five charged Jenkins and his co-defendants with conspiracy to obstruct a criminal proceeding (the criminal charges against Dickinson) in this district in violation of 18 U.S.C. §§ 1512 and 371. Smith pled guilty to Count Five, Getman pled guilty to an information alleging a violation of 18 U.S.C. § 1001, and the case proceeded to trial against Jenkins on Counts One, Three, and Five. At the conclusion of the government's evidence, Jenkins moved under Rule 29 for judgment of

acquittal, and the court noted on the record its concern that Counts One and Five appeared to be fatally defective and that Count Three was suspect. The court took all motions under advisement, and submitted the case to the jury. The jury acquitted Jenkins of Count One, hung as to Count Three, and found him guilty of Count Five. The court now concludes that Counts Three and Five of the indictment are fatally defective and that it is compelled to dismiss them on that ground, albeit without prejudice. The court denies, however, Jenkins' motion for judgment of acquittal.

## I.

Count Three of the superseding indictment (the count the jury failed to decide) charges Jenkins with obstruction of justice in violation of 18 U.S.C. § 1512(c)(2) and (k). The charging language of that count provides in its entirety that:

> On October 26, 2006 in the Western District of Virginia, Richard Jenkins, the defendant herein, did corruptly obstruct, influence, and impede, and attempted to obstruct, influence, and impede, an official proceeding to wit: a federal grand jury for the Western District of Virginia, by providing misleading testimony to the grand jury, including Roy Dickinson's membership in the CHAS, the transfer of the Corona property,[1] and the use of CHAS' membership to conceal and shelter assets and income from judgment creditors, as well as state and federal fiscal authorities.

(Superseding Indictment, Count Three, ¶ 2.)

Count Five of the superseding indictment (the count on which the jury convicted), which is entitled "Conspiracy to Obstruct a Criminal Proceeding," purports to charge a conspiracy in violation of 18 U.S.C. §§ 1512 and 371. The charging language of that count provides in its entirety that:

---

[1] The indictment identifies the "Corona property" as an apartment building owned by Dickinson located at 418 10th Street, Corona, California.

2

> From on or about January 27, 2008, and continuing through at least October 1, 2008, within the Western District of Virginia and elsewhere, Kerry Smith, Richard Jenkins, Louis Getman and others known and unknown to the grand jury, did corruptly obstruct, influence, and impede, and attempted to obstruct, influence, and impede, an official proceeding to wit: a criminal matter filed in the United States District Court for the Western District of Virginia, Roanoke Division, in violation of Title 18 United States Code, Section 1512.

(Superseding Indictment, Count Five, ¶ 7.) The remainder of the count details various acts that it alleges are "overt acts" in furtherance of "said conspiracy."

Well into deliberations, the jury asked for instructions as to what they should do if they were unable to come to an agreement on one count. Before responding, the court proposed to call to the jury's attention one of the court's earlier instructions considering the jury's obligation to try to reach agreement if it could do so but that jurors should not come to a decision simply because other jurors thought it right or simply to reach a verdict and that, if after considering that instruction the jury was unable to agree unanimously as to any count, the jury could leave that count unresolved. Counsel agreed in open court, and the court gave the agreed-upon instruction. The jury later returned a verdict of not guilty as to Count One, no verdict as to Count Three, and guilty as to Count Five.

## II.

Jenkins maintains that Count Three is defective because it is impossible to determine which aspects of his testimony the Grand Jury found misleading, thereby depriving him of the basic protection that the guarantee of indictment by a Grand Jury is designed to secure. He maintains that Count Five is fatally defective because it fails to allege the essential elements of conspiracy. The government counters that Jenkins was fairly on notice as to what he was being called upon to defend and that Counts Three and Five allege the essential elements of those

offenses. The Court agrees that both counts are defective for the reasons stated below. The Court begins its analysis with Count Five and then turns to Count Three.

### A.

Because Count Five purportedly charges a conspiracy, but contains no allegation of an agreement or understanding between Jenkins and at least one other person to commit an offense against the United States, the court finds that the indictment fails to allege an essential element of the offense, and therefore dismisses the charge.

The right to an indictment by a Grand Jury in a federal criminal proceeding is constitutionally guaranteed by the Fifth Amendment. To withstand constitutional challenge "an indictment must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense." United States v. Kingrea, 573 F.3d 186, 191 (4th Cir. 2009) (citing United States v. Daniels, 973 F.2d 272, 274 (4th Cir. 1992).

The Fourth Circuit has recently highlighted the first of these requirements, namely that an "indictment must include every essential element of an offense, or else the indictment is invalid." Id. (citing Daniels, 973 F.2d at 274; United States v. Hooker, 841 F.2d 1225, 1228 (4th Cir. 1988); United States v. Pupo, 841 F.2d 1235, 1239 (4th Cir. 1988)). The absence of an essential element is a constitutional infirmity that cannot be cured by mere reference to the applicable statute, adequate notice to the defendant, or the trial court's instructions to the jury. See Kingrea, 573 F.3d at 191, 193-94. This requirement "derives from the Fifth Amendment, which requires that the grand jury have considered and found all elements to be present." Id. at 193 (quoting Hooker, 841 F.2d at 1230). With these precepts in mind, the court examines Count Five.

Count Five purports to charge a violation of 18 U.S.C. § 371. The pertinent text of that provision makes it a crime when "two or more persons conspire either to commit any offense against the United States, or to defraud the United States . . . and one or more of such persons do any act to effect the object of the conspiracy . . . ." 18 U.S.C. § 371 (2006). As the court instructed the jury, the essential elements of a conspiracy in violation of § 371 are: (1) there must have been an agreement or understanding to commit the underlying substantive offense (obstruction of justice); (2) the defendant must have voluntarily and intentionally joined in the agreement or understanding; (3) he must have known the purposes of the agreement or understanding when he joined it; and (4) a member of the conspiracy must have committed an overt act in furtherance of the conspiracy while it was still in effect.[2] Although Count Five

---

[2] The court's instruction to the jury setting forth the elements stated:
The Crime of conspiracy as charged in Counts One and Five of the Indictment has four essential elements which the government must prove beyond a reasonable doubt:

| | |
|---|---|
| First, | On or about the dates alleged, two or more persons must have reached an agreement or an understanding to corruptly obstruct, influence, or impede an official proceeding in the United States District Court for the Western District of Virginia; in the case of Count One, a civil proceeding, and in the case of Count Five, a criminal proceeding. |
| Second, | That the defendant must have voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect, |
| Third, | That at the time the defendant joined in the agreement or understanding, he must have known the purpose of the agreement or understanding, |
| Fourth, | That a member of the conspiracy must have committed an overt act in furtherance of the conspiracy while it was still in effect. |

If the government fails to prove each of these essential elements beyond a reasonable doubt as to either Count One or Count Five, then you must find the defendant not guilty of that respective count.

alleges numerous overt acts as required by element (4), nowhere in the indictment is it alleged that Jenkins or anyone else conspired, agreed, or worked in concert to commit an offense against the United States as required by elements (1) through (3). Instead, the charging language of the indictment alleges that the defendants committed the underlying substantive offense. It alleges that Jenkins "and others . . . did corruptly obstruct, influence, and impede . . . an official proceeding." (Superseding Indictment, Count Five, ¶ 7.) In essence, despite being titled "Conspiracy," Count Five actually charges obstruction. On its face, the indictment offers no assurance that the Grand Jury found that there was ever an agreement, and therefore a conspiracy, between Jenkins and any other person. And the indictment's citation to the statutory section for conspiracy cannot cure this fatal defect.

Because Count Five fails to allege an essential element of the charge of conspiracy, the court sets aside the Jury's verdict as to that count and dismisses it.

### B.

Jenkins has moved to dismiss Count Three on the ground that it fails to allege with sufficient clarity or specificity the conduct constituting the offense charged. The United States counters that the language is clear or specific enough to put Jenkins on notice as to what he is being required to defend. The court concludes that although Count Three alleges the elements of the offense – obstruction of justice – its wording defies an effort to discern the precise testimony or factual representations the Grand Jury found to be misleading and that Jenkins is required to defend.

Beyond the essential element requirement, an indictment must also "fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a

future prosecution for the same offense." Kingrea, 573 F.3d at 191 (citing Daniels, 973 F.2d at 274). An indictment drafted in the generic wording of a statute may be, but is not necessarily, sufficient to achieve this end. However, "[w]here guilt depends so crucially upon . . . *a specific identification of fact*, [the Supreme Court's] cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." Hamling v. United States, 418 U.S. 87, 118 (1974) (quoting Russell v. United States, 369 U.S. 749, 764 (1962)) (emphasis in Hamling). Although in appropriate circumstances little more than recitation of the relevant statutory language may be all that is necessary to describe the charged offense with sufficient clarity, where that clarity is lacking, that recitation "'must be accompanied with such a statement of the facts and circumstances as [to] inform the accused of the specific offence, coming under the general description, with which he is charged.'" Hamling, 418 U.S. at 117-18 (citing United States v. Hess, 124 U.S. 483, 487 (1888)).[3] The prosecution cannot save a defective indictment by providing its meaning. The indictment must speak for itself. It is a "settled rule in the federal courts that an indictment may not be amended except by resubmission to the grand jury . . .," and if it fails to contain sufficiently specific allegations, it is invalid, and the court must dismiss it. Russell, 369 U.S. at 770. Indeed, "'[t]he very purpose of the requirement that a man be indicted by a grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge.'" Id. at 771 (quoting Stirone v. United

---

[3] Rule 7(c)(1) of the Federal Rules of Criminal Procedure, which governs the form of an indictment, requires an indictment to contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." An indictment which complies with Rule 7 "fulfills the Sixth Amendment right 'to be informed of the nature and cause of the accusation;' it prevents a person from being subject to double jeopardy as required by the Fifth Amendment; and it serves the Fifth Amendment protection against prosecution for crimes based on evidence not presented to the grand jury." United States v. Walsh, 194 F.3d 37, 44 (2d Cir. 1999).

States, 361 U.S. 212, 218 (1960)).

In this case, Count Three charges that Jenkins "did corruptly obstruct, influence, and impede . . . a Federal Grand Jury . . . by providing misleading testimony to the Grand Jury, including Roy Dickinson's membership in the CHAS, the transfer of the Corona property, and the use of CHAS' membership to conceal and shelter assets and income from judgement creditors . . . . All in violation of 18 U.S.C. Section 1512(c)(2) and (k)." (Superseding Indictment, Count Three, ¶¶ 2-3.) While this charging language tracks the elements of 18 U.S.C. § 1512, the accompanying allegations are too open to interpretation to ensure that Jenkins is being tried for the specific conduct the Grand Jury found indictable, and for the same reason, too open to interpretation as to the conduct Jenkins is being called upon to defend.

The government has argued that the indictment's language is sufficiently precise and that the allegation, for example, that Jenkins provided misleading testimony to the grand jury "including Roy Dickinson's membership in the CHAS" refers to Jenkins statements concerning the actual date Dickinson became a member of that bogus organization. The government's argument demonstrates just the opposite. The prosecutor is supplying the indictment's meaning. An indictment, however, must speak for itself. The court would normally expect to see language to the effect that Jenkins testified to X, when indeed the truth was Y, and that his mischaracterization of certain facts was intentional and offered to mislead the Grand Jury. If the Grand Jury found as the prosecution indicates it found, then the court would expect to see language to the effect that Jenkins testified that Dickinson became a member of CHAS on a particular day, although he well knew that Dickinson had not become a member on that date but rather on a later date, and that this testimony was offered for the purpose of misleading the Grand

8

Jury. Instead, the indictment merely alleges that Jenkins testimony was misleading in some, undefined way. It is impossible to tell which of Jenkins' statements the Grand Jury found misleading. In short, interpreting Count Three requires unacceptable guesswork. "To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendants of a basic protection which guarantee of the intervention of a grand jury was designed to secure." Russell, 369 U.S. at 770. Accordingly, the court dismisses Count Three of the indictment.

## IV.

Jenkins moved for judgment of acquittal under rule 29 of the Federal Rules of Criminal Procedure at the conclusion of the government's case and again before the court submitted the case to the jury. The court held Jenkins' motion under advisement and now denies that motion as to both Counts Three and Five.

It is sufficient to state as to Count Three, that there is no review of the sufficiency of evidence presented at a trial that results in a properly granted mistrial. See Richardson v. United States, 468 U.S. 317, 325-26 (1984); United States v. Julien, 318 F.3d 316, 321 (1st Cir. 2003); United States v. Coleman, 862 F.2d 455, 460 (3d Cir. 1989). Accordingly, the court is not compelled to review the sufficiency of the evidence as to Count Three, and it denies Jenkins' motion for judgment of acquittal as to that count.

Count Five stands on a somewhat similar legal footing viewed from Jenkins' perspective,[4]

---

[4] To the extent that it could be argued that Jenkins is entitled to have the court decide his sufficiency of the evidence motion under Rule 29 as to Count Five, before ruling on the legal sufficiency of the indictment (a paradoxical task given the insufficiency of the indictment), in the light most favorable to the United States, the evidence supports the jury's verdict as to that count under the agreed upon conspiracy instructions the court gave the jury.

except that the jury returned a guilty verdict on a fatally defective count, and the court is setting aside that verdict and dismissing that count on Jenkins' motion solely because it is defective.[5]

V.

For the reasons stated, the court sets aside the jury's verdict as to Count Five, dismisses Counts Three and Five as to Jenkins, and denies Jenkins' motion for judgment of acquittal as to those counts.[6]

---

[5] In the event the Government seeks to retry Jenkins on a new indictment, neither the declaration of mistrial nor the dismissal of the indictment implicates the Double Jeopardy Clause. In both instances, the Supreme Court has made it clear that, absent intentional misconduct by the prosecutor, or serious prejudice, a defendant remains in his first jeopardy. As the Supreme Court has stated:
> [A] trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which [the defendant] was subjected. The government, like the defendant, is entitled to resolution of the case by verdict from the jury, and jeopardy does not terminate when the jury is discharged because it is unable to agree. Regardless of the sufficiency of the evidence at [defendant's] first trial, he has no valid double jeopardy claim to prevent his retrial.

Richardson, 468 U.S. at 326. See Lee v. United States., 432 U.S. 23, 34 (1977) ("retrial after dismissal of [a] defective [indictment] at [defendant's] request [does] not violate the Double Jeopardy Clause"); United States v. DiFrancesco, 449 U.S. 117, 131 ("if the first trial has ended in a conviction, the double jeopardy guarantee imposes no limitations whatever upon the power to *retry* a defendant who has succeeded in getting his first conviction set aside") (internal quotations and citations omitted). See also United States v. Council, 973 F.2d 251, 254 (4th Cir. 1992) (affirming that when there is no evidence of prosecutorial overreaching, the double jeopardy clause does not bar retrial). When it appears that a prosecutor was simply negligent, and there is "no evidence that the prosecutor's actions were intended to force [the defendant] to request a dismissal," Double Jeopardy is not implicated. Council, 973 F.2d at 254.

[6] On the morning of trial, the United States and Jenkins's co-defendant, Louis Getman, announced that they had entered a plea agreement that called for Getman to plead guilty to Count Six of the indictment charging Getman with violating 18 U.S.C. § 1001. The court refused to accept a plea to that count because it was fatally defective because it too failed to allege essential elements. Getman then pled to a properly drafted information.

As noted earlier, Jenkins's co-defendant, Kerry Smith, pled guilty to Count Five. After the verdict in this case, the court informed the United States' and Smith's counsel that it would consider a motion by Smith to withdraw his plea of guilty based on the insufficiency of Count

10

**ENTER:** This 28th day of December 2009.

                                                                  UNITED STATES DISTRICT JUDGE

---

Five. However, a guilty plea waives all non-jurisdictional defects in the indictment, see Tollett v. Henderson, 411 U.S. 258, 267 (1973); United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993), and defects in the indictment are not jurisdictional. United States v. Cotton, 535 U.S. 625, 631 (2002). Consequently, a knowing and voluntary plea would have waived any argument that the indictment was defective. United States v. Todd, 521 F.3d 891, 895 (8th Cir. 2008).